The court will call the next case. Case number 24-3382 from the Eastern District of Arkansas, Dan Pennington et al. v. BHP Billiton Petrol et al. I do not see that we have Judge Smith yet. Yeah, we'll wait for him to show up. Judge Smith is back with us. Can you hear us, Judge? Judge? Judge Smith, can you hear me? Yes, I can. All right. Thank you. We'll go ahead and go back. See, I'm going to say back on the record because I still think I'm a district judge. That's a bad thing. You go ahead and call the next case. That's what we're supposed to do. Case number 24-3382 from the Eastern District of Arkansas, Dan Pennington et al. v. BHP Billiton Petrol et al. Ms. Burroughs, you may. Good morning. Thank you, Your Honor. May it please the court, Stacey Burroughs on behalf of the appellant royalty owners, Dan Pennington, Norma Bryant, and Aaron Parrish Black as trustee of his two grandma and grandpa's trusts, family trusts, if you will. You know, they ask, what is the most important decision you will make in your life? Obviously, the first one is who you'll marry. The second most important decision is where will you buy land? Where will you invest? Where will your heritage be? What will you pass down to your descendants? And this is the question that we are looking at today. We're talking about questions that are going to affect the property rights of thousands of Arkansas landowners, mineral owners. As James Madison so eloquently stated, the rights of persons and the rights of property are the objects for the protection of which government is instituted. The district court's decision here, stripping the landowners, the mineral owners' rights, violates the eerie principles, which we're going to talk about today, the plain language of the allocation statute related to integrated owners, the clear intent of the legislature that was recently clarified through the 2025 amendment, and the course of performance and the understanding of the Arkansas oil and gas operators, including Flywheel's predecessors for more than 30 years. So let's start this morning by addressing what the district court did. And we're talking about two important decisions that I would like to focus on this morning. First of all, we talk about the district court's analysis of the eerie principles and its application of the same. If you find that the district court here violated the eerie principles, then you must reverse that decision. If you find that the district court improperly interpreted the statute contrary to guidance provided by the Arkansas state courts, then you must also reverse that decision. Both of those reviews today that you're looking at are de novo, meaning with clear eyes, you're going to look at these decisions. So let's start to talk about the flawed eerie doctrine analysis that the district court conducted here. The primary aims of the eerie doctrine are discourage forum shopping and avoid of inadequate administration of the laws. Right now, you have two different sets of laws. If a royalty owner was complaining about deductions being taken to their first one-eighth royalty, if they filed in Arkansas state court, they would win. If they filed in Arkansas... I'm just not as familiar as I should be with Arkansas state courts. There's one court of appeals in Arkansas, is that correct? And then a Supreme Court as well. So it would be binding on all actions at this point. The Flywheel decision would be binding on all actions filed in Arkansas state court, is that correct? That is correct, Your Honor. So if a royalty owner were to challenge deductions of post-production costs that were being taken on their first one-eighth royalty under an oil and gas lease, is what we have here. Every single one of my clients individually negotiated, or their predecessor did, an oil and gas lease that specifically states that royalties would be paid on gross... Do non-prevailing parties have a right of appeal from the court of appeals to the Supreme Court in Arkansas, or is that discretionary? It is not an automatic right of appeal. It is discretionary, and we will talk about that in this case. The Flywheel decision that the district court rejected, hands down, in finding his own conclusion about what the statute meant, the Supreme Court had an opportunity to take that case, but rejected it, or did not accept it. Well, did they have an opportunity to take this case and rejected it as well? And so wouldn't we have... Given that Judge Rudofsky followed the rule and said, I predict the answer is X, and then the Supreme Court didn't take it, now you've got two cases that the Supreme Court didn't take with diametrically opposed decisions, and am I wrong? May I clarify there, Your Honor? Yeah, you may. Okay, so the Flywheel decision was post-heard writ, meaning, or the certified question was first done by Judge Rudofsky saying, if I find it, and I am asked to make this statutory interpretation, I'm going to find this way, correct? He wrote out his analysis, which is unlike any other district judge I've ever been before in my life. He writes out, this is exactly how I'm going to find it. I have no leniency. I don't care how you find it, Supreme Court of Arkansas, but this is how I would find it. That's what he says. Well, we're supposed to predict. When you certify a question to the Supreme Court of a state, the district judge is supposed to predict what the answer would be. Absolutely, and I would not say the district courts haven't given us an indication. Typically, their request to certify a question is not as in-depth as Judge Rudofsky's was, and that's where my appreciation came from. So can we read into the Supreme Court's denial, or how do we read that differently than the refusal to review the Court of Appeals? And I would say this is twofold. Thank you for that question, Your Honor. First of all, there had been a 30-year custom and practice where the Arkansas operators did not take the deductions that are being challenged here. So there was an interpretation by the commission and operators for 30 years that the statute did not allow these post-production costs at issue. So the state court was on a path, right? Judge Rudofsky sent his certified question to the Supreme Court. It did not accept it. After that, flywheel came down. Flywheel then became the law of the land. The flywheel decision is the decision where the district court found that the statute is ambiguous as to net proceeds, and thus did not require or allow the deduction of these post-production costs as to integrated owners. But if you look at the lineage, so first of all, the Arkansas court knows, I would assume, has some appreciation that there's been an understanding in the state of Arkansas. There haven't been a lot of challenges because both parties had appreciated at that time that these deductions were not being taken. The flywheel decision is the first one that goes up on appeal on this issue, okay? When that flywheel decision comes down, that intermediate court decision becomes the law of the land. Then there's appeal request. But it doesn't bind us on our eerie guess, does it? It does not bind. It should be persuasive, exceedingly persuasive, I think is what Judge Rudofsky appreciated. Is there the ñ is a necessary component of the flywheel decision this finding that net proceeds is ambiguous? I mean, that's the first question. Let's assume for the sake of argument, I don't get that. That doesn't make a lot of sense. I assume that doesn't matter, right, whether we think an intermediate court is incorrect. But when I look at the Hanna decision from the Supreme Court, I'm wondering would the Arkansas Supreme Court agree with that threshold decision about net proceeds being ambiguous? I mean, on its face, that seems questionable to me. That is a widely used term. That is used in industry, and I'm going to point you directly to a case that specifically says when interpreting oil and gas leases, you can't go to custom terms and usage. The Arkansas Supreme Court's decision ñ But Hanna was an oil and gas case, right? It was, but it doesn't say ñ It doesn't slam the door on it, but we're looking for our best guess. I wouldn't even say it's dicta, Your Honor. It says under proceeds, we're going to treat it as gross proceeds. Then it goes on to say maybe if it said net proceeds, that would mean something different. Which clearly didn't view that as ambiguous, I don't think. It didn't state what it really means either. And I've been in cases where net proceeds meant the deduction of taxes. It really means where you're at, what the state has interpreted it to mean, what the state law is regarding that term. Is that what the Court of Appeals basically did? Because there are parts of that flywheel opinion where it seems like the court is deferring to the agency. I would say only after it concluded on a de novo review that it was ambiguous, and that is proper. Because when you look at the statutory canons of interpretation, there are various things you can look at. And an agency's interpretation is supposed to be similar to an area analysis, highly persuasive. There are other things. You look at the practice of the parties. What have the operators in the state of Arkansas been doing for the last 30 years? You look at what does the statute plain language say. And remember, there's two places in that specific statute that says you cannot disregard the plain language of the lease. I believe it's in A2 specifically. The agreement, the contract negotiated between the parties dictates. And at the end, it talks about an excess royalty. And that's one fact that I think the district court just failed to appreciate. In this case, rarely do you have a one-eighth royalty owner who negotiated a private lease that doesn't have more than one-eighth. So they're already getting an excess royalty. And a lot of times, they're getting their excess royalty plus the deductions that may have been taken based on that baseline. My reading of that statute is we understand as the commission, as the legislature, that there are problems about getting payments made out to royalty owners. So we're going to require that this baseline payment get made. And the actual lessee here, the party that owes the contract obligation to royalty owners, is going to be paying an excess royalty. That's been happening to my clients for years. That excess royalty typically included any post-production costs that may or should not have been taken. And above one-eighth royalty, which is considered additional part of the excess royalty. That baseline was never meant to trump contract rights of individuals such as my clients. They negotiated specific language about how their royalties are to be paid. The statute that the operators are relying on here specifically says you cannot disregard that language. And when Flywheel was asked to analyze this as to integrated owners, even though I believe that the opinion is on all fours, because we're talking about the specific statute. We're talking about the specific operator. We're talking about the specific deductions. All of those line perfectly. When Flywheel looked at that and said the Flywheel Court, the Court of Appeals, says we think that net proceeds even contained in there is ambiguous because we really don't know exactly everything it meant. And so we're going to look at the other canons of statutory interpretation to find out what that means. And that does not mean that an operator like Flywheel has the right to take the post-production costs that are at issue. And when that became the law of the land in Arkansas, Judge Rudofsky did not have the right to just disregard it. What he says is just because the state court has not decided the issue does not leave that state without law. That's exactly what he says in his heard opinion. Just because the state Supreme Court has not ruled does not leave that state without law. That intermediate court decision is highly persuasive to the decision of the state of Arkansas. And if the state Supreme Court did not agree with Flywheel, I surmise to you it would have taken the case. It didn't. And that has been the practice for 30 years. So when Judge Rudofsky decided to disregard the Flywheel opinion, he violated the Injury Principles. He decided in his opinion that he thought the Flywheel Court did not conduct a de novo review of what net proceeds mean. The opinion specifically appreciates that the Myers decision, the 2020 Supreme Court of Arkansas Myers decision, specifically says that there must be a de novo review of the statute. The Arkansas Court of Appeals and Flywheel says we understand we're doing a de novo review. It was decided directly to the court that Judge Rudofsky relied on. Second, they said, once we found that that term became ambiguous, we used the other statutory canons of instruction to decide what that term means, consistent with the laws of the state of Arkansas, meaning we can look at how the agency decided that issue because that is one of the additional interpretation tools that we have at our disposal. What Judge Rudofsky said- Counsel, this is Jeff Smith. We have precedent in our circuit that in making the eerie call, our court has the discretion to determine that an intermediate court isn't the best statement of what the state law is. I absolutely agree with you, Your Honor. It says you must have strong indicators, strong facts. When you look at Judge Rudofsky, he first starts, there's four things he looks at. I don't think the Flywheel Court did a de novo review of the statute, which the Flywheel Court specifically says in an opinion, we did a de novo review. We appreciate we have to. Then he says, I think there was too much weight given to the agency's understanding, interpretation of net proceeds. Well, that's one of the statutory opinions that's appreciated by the Arkansas Supreme Court to be utilized in interpreting an ambiguous provision. Next, he goes into the analysis. I'm going to look at Fifth Circuit law and Texas law to determine what net proceeds mean. First of all, Texas and Fifth Circuit law are all at-the-well states, meaning those are not what Arkansas has denoted as obligations of operators such as Flywheel or lessees as the defendants here. That is not the law of the state of Arkansas. You can't turn to interpret the statute in Arkansas, turn to states that don't use the same type of provisions or law that's used in Arkansas, and that's how Judge Rudofsky failed. He failed when he first said, I don't think that there was a de novo review. I don't think that the agency should have been given discretion. And then I'm going to turn to cases outside the state of Arkansas to interpret this, including using industry standard and practices, which is specifically prohibited under Arkansas law. You cannot look at industry custom and practices to interpret a royalty provision under Arkansas law. And I will give that site to you when I come back. I'm going to reserve the rest for my rebuttal if that's okay. Counsel, you didn't mention your contract clause argument. Are you going to continue to push that argument or just rely on your brief? I think we're going to rely on our brief on that issue, Your Honor, if we may. Thank you. Mr. Hyster. You may. May it please the court, my name is Michael Hyster, and I represent the Appalachians in this case, MMG Arkansas Upstream, and BHB Billiton Petroleum Fayetteville. This court should affirm the district court's decision, which was correct on two key issues. And with the court's permission, I will address the statute first and the eerie question second. With respect to the statute, it's important to back up for a second and appreciate, as Judge Rudofsky did, that section 305 and section C in particular were implemented to institute a comprehensive royalty program that assured all leaseholders in drilling units, about 640 acres, received a share in the proceeds of the gas pumped from that drilling unit, regardless of whether their particular wells are pumping or not. So everyone in the unit shares, I think another judge described it as, the first fruit of the one-eighth of the gas pumped from that unit, again, irrespective of whether their actual wells were generating anything at all. Well, are there actually wells on these other parcels of land? I mean, it seems to me that the way that planned unit developments, at least in North Dakota, exist, is that they drill on one corner of the piece of property, they frack, they drill horizontally, sometimes out miles, and they drain the whole unit, right? I mean, and so it's not about whether or not you have a well, it's the fact that they're taking the gas and oil out from underneath your property, even though the well itself might be, the pumper on a well might be a mile and a half away. Exactly, Your Honor. The operator extracts the natural resource from the most efficient place possible, and everybody shares in the benefit of that. That's the statutory scheme. And that's how Judge Rudofsky interpreted the statute. And in particular, there's four provisions. A3, which includes the net proceeds language, and then there's A3B1, a subpart to that that elucidates what net proceeds means, and that's where we see that at the mouth of the well language. And then we have A6, which provides a discharge for the working interest owners and the operator when the one-eighth royalty provided by Section 305 is paid. And then we have A8. That's a section of the statute, I think the appellants briefly mentioned, that says kind of the excess amounts are preserved. And we obviously disagree about what that excess language means. Judge Rudofsky understood it to mean, and it does mean, that amounts above the first one-eighth. So, for example, if someone had a 20% royalty, the first one-eighth of that, I think it's 12.5%, is subject to the statute. Beyond that, the right to payment is preserved. And that is not a part of this lawsuit. So there's also a brief mention to A2. And Judge Rudofsky did address A2 and specifically noted the language in that statute that calls back to applying leases was drafted 20 years, if not earlier, than A3, the comprehensive scheme enacting this program. And so Judge Rudofsky did, again, look at every part of the statute with possible application here. And he said, you know, A2 isn't some loophole. A2 is a remnant of a statutory scheme that I think he traced back to the 1930s. Whereas Section 305, the section that established this comprehensive program, was implemented in 1985. So, Counsel, what's your view of the effect of Act 1024, which came into play earlier this year, earlier last year? I think that the reason Act 1024 was necessary is because the existing statute didn't provide the rights that the appellants claim they've been entitled to all along. That's why the remedial legislation was necessary. What should we make of the fact that, you know, for 30 years or 25 years, the 8C was interpreted as allowing the collection of a greater royalty from people who had their leases in place that provided for a larger royalty interest and provided specifically for not paying these additional costs? I mean, and so we have a period of years where everybody operates where they think this is the law. And they have a place where, mistakenly or not, they can point to someplace in the statute where they think that supports what they've got. And immediately thereafter, once somebody calls that into question, the legislature acts. And so now we have a finite world. The only people who hold royalty interests that are going to lose in the world that you are describing are the people who are the subject of this lawsuit. Because everybody else is going to be governed by Arkansas law, and they're all going to be protected from the date of the new enactment going forward. Now, we have the people for the first 30 years that all got what they thought they were supposed to get. Now we have this group of people we're going to treat differently. And we have a court of appeals that says that's not how it's supposed to be. Why should we not be persuaded by the court of appeals decision? Because the court of appeals decision is far narrower than it appears on its face. And if you ask what exactly it is that we are kind of adhering to, I think that's problematic because the Flywheel v. Arkansas Oil and Gas Commission decision does an excellent job of kind of reciting the provisions by which we conduct a de novo review. It lays out the black letter law, and it outlines Flywheel's position, and says we disagree, we think the statute is ambiguous. What is more difficult to understand, if not impossible, is exactly why the court reached that conclusion. It didn't agree with some of Flywheel's arguments. That much is clear in the opinion. But if you read it closely, the Arkansas Court of Appeals never addresses, for example, A3BI and its language about the net proceeds. So that's suggesting the Flywheel decision is incorrect, right? Is that enough for us? Yes, Your Honor. I mean, I think we have to assume the Arkansas Supreme Court is going to rule correctly on an issue. And if we look back at Eighth Circuit precedent like square one. Well, I mean, like our disagreement with state courts is not enough, right? I mean, maybe I misled you with correct. I mean, we may have voted differently or ruled differently, my question is. And that's not enough, is it? We need to think that the Arkansas Supreme Court would correct this error. All we can do is take what we have in front of us. We have the Flywheel decision, and we say, what quality evidence is this? And if you're unable to recreate the reasoning employed by the intermediate appellate court, then that's not adequate evidence, Your Honor. What about the fact that the Arkansas Supreme Court let this decision stand? And it is currently the law of the land in Arkansas state courts. Well, two thoughts. One, we should never put too much weight on a higher appellate court declining to review a lower court. That can be a lot of reasons. Except here we're trying to predict what the higher court would do specifically. Yes, but as has already been noted, it saw no reason to review Judge Rudofsky's decision applying in that context to this case. But it also saw no reason to review the administrative appeal from the Oil and Gas Commission. And that was my second point, which was that the second case, the appeal from the Arkansas Oil and Gas Commission, arises under a very unusual procedural context. There you have the decision from a state agency. And something that goes, there's a downplay that's not addressed at all, is that the Oil and Gas Commission has separate statutory authority under Section 304 to protect the interest of non-leasing parties. And that's who was talking about in the Flywell decision. How do we protect these parties who don't have leases at all? That was the issue in front of it. That was the issue on appeal. And the court relied on that distinction when discussing some of the Arkansas Supreme Court precedents. Saying, well, this case doesn't involve, the intermediate court said, our case doesn't involve these leaseholders. Our case involves parties who have been involuntarily integrated. And so that was the Flywell case. That is not this case. Counsel, if this case were in an Arkansas court and went up to the Arkansas Court of Appeals under Flywell, how would it come out? Your Honor, I think the trial court and the Court of Appeals would appreciate the distinction between the two. The Arkansas Court of Appeals, in finding that the statute was ambiguous, I think a trial court is probably bound by that. However, I'm sure the court is aware of Judge Marshall's decision in the Flywell v. York case a few months ago, in which the Constable Flywell challenged the constitutionality of the act upon which the plaintiffs mentioned. And he granted their preliminary injunction to the retroactive effect of that statute. Saying, you know, he went through his own analysis, and he agreed with Judge Rudofsky on the Erie front, that you couldn't, that the statute kind of allowed, that the plaintiff's flywheel was likely to proceed, or I'm sorry, prevail on the merits of its claim that the statute was a contract clause violation under the Arkansas Constitution, insofar as it had retroactive application. And it can only be a contract clause violation with respect to flywheel if it is kind of upsetting past expectations, which in this case is kind of the application of the statute, just as Judge Rudofsky interpreted it. So I think that court also, so we have two federal court judges conducting Erie analyses, both declining to implement the flywheel decision. So is your view that flywheel is wrongly decided, or that flywheel is inapplicable? I always hesitate to say it's wrongly decided, Your Honor. I think it is written in a way that cannot serve as reliable evidence, because its reasoning cannot be reconstructed and validated by a federal court. And I also think the context in which it arises, and the fact that it was an administrative appeal, the flywheel court said quite plainly, we have a narrow scope of review in that context. And there, in the administrative context, it felt far more comfortable relying very heavily on the Oil and Gas Commission's findings as they were. I think we disagree strongly that there is a long history where everyone paid gross proceeds amounts. I think the record in this case does contain that. But I think in other published decisions addressing this issue, some operators did, some did not. I think that's something that, for example, I think is discussed by Judge Marshall in his more recent decision. So I think the district court was correct in staying in its lane and interpreting the statute in a manner that made sense of all the provisions and implemented a royalty program that was consistent with what was intended by the Arkansas General Assembly. I feel like I probably, unless the panel has any additional questions, I think I'm ready to go ahead and sit down. Thank you. Thank you. Ms. Burrell? Thank you, Your Honor. I'm going to work backwards if I could. But first, I'll give you that citation. TXO Production Court v. Page, Arkansas Supreme Court from 1985. A court established the party is not bound by industry, customer usage, simply because a term is common in the oil and gas industry. To the contrary, the proponent of the custom must first prove that the other party was so familiar with the oil and gas business that their knowledge and acceptance of the particular usage must be presumed. And in this case, we have the opposite. Just like Judge Erickson pointed out, we have 30 years of practice where these post-production costs are not being deducted. Then we have a couple-year gap. And then we have the amendment coming into effect saying it was clear we thought, as the legislator stated, that these net proceeds were not inclusive of all the post-production costs at issue. I also want to go back to Judge Smith's earlier question about Ms. Burrows. We have some precedent here that you don't always have to follow the intermediate court. And I, too, appreciate that with you, Your Honor. But I would state that what Judge Rudofsky relied on, I think it's the Rashaw case and the Bogan case. In both of those cases, the appellate court, the Eighth Circuit, found that the Erie analysis was appropriate for not following that intermediate court because the district court had simply failed to appreciate there was an Arkansas Supreme Court case on point, for example. In those cases, that intermediate decision wasn't the best evidence because you had other rulings or there was a convoluted history of the legislature. And so the legislative intent wasn't known by the district court or pointed out to it. There's perfect examples when an intermediate court is not the best evidence. Not in this case, when even the district court recognized this decision in Flywheel was on all fours to the decision we have here. And I just want to end with, we have leasehold owners here that actually negotiated contracts with operators, lessees here. The integration order that was interpreted in the Flywheel case was related to people that didn't even have leases. So they're getting a better deal than what my clients who are landowners, minerals, actually negotiated. Gross proceeds or no deductions. I just think that flies in the face of the contract rights, Your Honor. And that's addressed in our contract due process analysis. And I'm concluding. Thank you. The matter is taken under advisement or submitted. I appreciate what the court appreciates. Your briefing and arguments here today, they were very helpful. Thank you, Your Honors.